UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 12-CV-03990 (AMD)(RER)

———————————

DMITRIY SEREBRYAKOV, DMITRIY KURAMYSHEV
*INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED PERSONS*

Plaintiffs,

VERSUS

GOLDEN TOUCH TRANSPORTATION OF NY, INC., LOKEKO INC., DOUBLE "K" USA, CORP., KONSTANTIN DERGUNOV

Defendants.

———————————

**SUMMARY ORDER**

———————————

RAMON E. REYES, JR., U.S.M.J.:

Plaintiffs Dmitriy Serebryakov and Dmitriy Kuramyshev (collectively, "Plaintiffs") commenced this action on August 10, 2012, on behalf of themselves and all other similarly situated current and former employees of Defendants Konstantin Dergunov, Lokeko Inc., and Double "K" USA, Corp (collectively, "Defendants") [1]. Plaintiffs allege violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA") and New York Labor Law ("NYLL"). On June 9, 2015, Plaintiffs moved to conditionally certify a collective action and to distribute notice to putative members of the collective action pursuant to FLSA § 216(b). Defendants opposed the motion. For the following reasons, the Court grants the motion to certify the collective action and approves, with modifications, the proposed notice to putative members of the collective action.

**BACKGROUND**

Defendants Lokeko Inc. ("Lokeko") and Double "K" USA Corp. ("Double K") are

---

[1] Defendant Golden Touch Transportation of NY, Inc. was dismissed from this action pursuant to a settlement agreement reached with the Plaintiffs. ECF Dkt. No. 36 (Entered: 07/02/2013).

two Golden Touch Transportation shuttle bus franchises owned and operated by Defendant Dergunov. Defendant Dergunov hired Serebryakov and Kuramyshev as drivers for both Defendant Lokeko and Double K. Plaintiff Serebryakov worked for Defendants from September 26, 2011 until around May 26, 2012. (Dkt. No. 59, Exhibit 1 (Decl. of Dmitriy Serebryakov ("Serebryakov Decl.")), ¶ 1). He worked five days a week from 5:00PM to 6:00AM (for a total of approximately 65 hours per week). (Serebryakov Decl. ¶ 3). Plaintiff Kuramyshev worked for Defendants from September 2011 until July 2012. (Dkt. No. 59, Exhibit 1 (Decl. of Dmitriy Kuramyshev ("Kuramyshev Decl.")), ¶ 1). He worked four days a week from 3:30PM until 6:00AM (for a total of approximately 58 hours per week). (Kuramyshev Decl. ¶ 3).

Plaintiffs allege that Defendants maintained unlawful wage policies and practices. During their period of employment, neither Plaintiff was paid an hourly rate of pay nor an overtime premium for work performed in excess of 40 hours per work week. (Serebryakov Decl. ¶¶ 3-8; Kuramyshev Decl. ¶¶ 3-6). Instead, Defendants compensated Plaintiffs at a rate of 60% of receivables from Defendants' franchisor Golden Touch Transportation (Serebryakov Decl. ¶ 6; Kuramyshev Decl. ¶ 5). Plaintiffs did not derive any other profits, could not hire their own drivers or drive their own customers. (Serebryakov Decl. ¶¶ 11-12; Kuramyshev Decl. ¶¶ 10-11).

To avoid paying Plaintiffs and other drivers an overtime premium for work performed in excess of 40 hours a work week, Defendants required some drivers to sign an agreement that designated them as "independent contractors" and concurrently required them to open their own corporate entities to receive payment from Defendants. (Serebryakov Decl. ¶ 10; Kuramyshev Decl. ¶ 9). Plaintiffs further allege that Defendants controlled Plaintiffs' duties by requiring them to text Defendant Dergunov every two weeks to report on trip expenses.

Based on Plaintiffs' conversations with other drivers of the Defendants, such as "Yivgeny, Roman, and Aziz (last names unknown)," Plaintiffs became aware that other employees were subject to similar hours, working conditions and received similar wages of 60% of the receivables from Golden Touch Transportation of NY. (Serebryakov Decl. ¶¶ 5-10, 13-17; Kuramyshev Decl. ¶¶ 4-8, 10-15). These drivers were similarly not paid an hourly rate of pay or an overtime premium for hours worked in excess of 40 hours a work week. (Serebryakov Decl. ¶¶ 8-9; Kuramyshev Decl. ¶ 6, 8). Further, like Plaintiffs, outside of the compensation received from the Defendants, these drivers had no opportunity to acquire profits from their duties. (Serebryakov Decl. ¶ 11, 13; Kuramyshev Decl. ¶¶ 10-12). Accordingly, Plaintiffs now seek conditional certification for similarly situated individuals, *i.e.,* "all current and former drivers, including drivers classified as 'independent contractors,' who worked for, or contracted with, Defendants Konstantin Dergunov, Lokeko Inc., or Double 'K' USA, Corp. at any time since August 10, 2006 to the entry of judgment in this case (the 'Collective Action Period')." (ECF Dkt. No. 59 (Plaintiff's Memorandum of Law in Support ("Pl.'s Br.")) at 7)[2].

---

[2] Reference is made to page numbers as assigned by the ECF docketing system.

## DISCUSSION

**Serebryakov and Kuramyshev as Lead Plaintiffs**

### A. Legal Standard

The FLSA permits employees to assert claims on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). To determine whether such claims can be maintained as FLSA collective actions, the Second Circuit endorses a two-step process. *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010). First, a court must make "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555; *see also Hoffmann v. Sbarro*, Inc., 982 F.Supp. 249, 261 (S.D.N.Y.1997) (citation omitted). Second, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* at 555. It is the first stage of this two-step process that is before the Court.

At this preliminary certification stage, Plaintiffs need only "make a modest factual showing that they and potential opt-in plaintiffs together were victim of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (citation and quotation marks omitted); *see also Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13–CV–60, 2013 WL 5132023, at *4 (E.D.N.Y. Sept. 12, 2013). While the factual showing for conditional certification is a "lenient one," placing a low burden upon plaintiffs, "[it] must still be based on some substance." *McGlone v. Contract Callers, Inc.*, 867 F.Supp.2d 438, 443 (S.D.N.Y.2012) (citations omitted); *see also Myers,* 624 F.3d at 555 ("The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist.") (citations omitted). As such, Plaintiffs may meet their burden "by relying on their own pleadings and affidavits, or the affidavits of potential members of the collective action." *Grant v. Warner Music Grp. Corp.*, No. 13–cv–4449, 2014 WL 1918602, at *3 (S.D.N.Y. May 13, 2014). Satisfaction of the modest factual showing does not require proof of an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F.Supp.2d 354, 362 (E.D.N.Y.2007).

Defendants oppose conditional certification on the basis that Plaintiffs have not met their burden in showing that they are similarly situated to potential opt-in plaintiffs. (ECF Dkt. No. 60 (Defendants' Memo of Law in Opposition ("Defs.'s Br.")) at 4, 6-7). In so arguing, Defendants essentially raise two points: First, that a higher standard for conditional certification should govern this action "because discovery has already started in this case, the minimal burden is slightly more strict, as the Plaintiffs have had an opportunity to use the discovery to show that other potential putative plaintiffs are similarly situated." (Defs.'s Br. at 4). Second, that the factors considered by the courts to determine whether members of a putative class are similar situated should counsel this Court towards denying conditional certification. (Defs.'s Br. at 4, 6).

### B. Defendants' Reliance on a Heightened Standard is Misplaced

Defendants' reliance on *Bai v. Zhuo*, No. 13-CV-5790, 2014 WL 5475395 (E.D.N.Y. 2014), for the imposition of a heightened standard at the preliminary certification stage is sorely misplaced. (Defs.'s Br. at 6). In *Bai*, Chief Magistrate Judge Gold held the plaintiff to a heightened standard, but only because of the particular facts of that case. *Bai* involved a single plaintiff who supported his motion for conditional certification with only his own affidavits and filings. Bai's filings contained factual discrepancies, and even after the commencement of discovery, he was unable to identify "a single individual other than himself who was employed by [the] defendant." *Id.* at 3. As Judge Gold noted, "while it would not be appropriate to hold plaintiff to the higher standard that applies after discovery is complete," the factual context of the case, whereby "plaintiff ha[d] been unable to muster any corroborating evidence even after obtaining responses to his written discovery demands" prompted the heightened standard. *Id.* at 3.

The present case is, however, notably distinct from *Bai*. Here, we have two plaintiffs, both of whom have alleged a common unlawful policy and there being no basis, at this conditional stage, to infer any discrepancies in their filings. Further, as opposed to the plaintiff in *Bai* whose effort to identify potential plaintiffs resulted in the receipt of responses to interrogatories and documents demands, discovery in the present case has been more limited. Indeed, Plaintiffs note that Defendants' have only provided "documents in relation to the individual Plaintiffs and nothing for the Putative Collective Plaintiffs." (ECF Dkt. No. 61, (Plaintiff's Reply Memorandum of Law in Support ("Pl.'s Reply Br.") at 4-5)).

Absent other compelling circumstances, the heightened standard applies only after discovery and notice and opportunity to opt-in -- after a finding of conditional certification. *Gortat v. Capala Bros., Inc.*, No. 07–CV–3629, 2010 WL 1423018, at *9 (E.D.N.Y. Apr. 9, 2010); *Torres v. Gristede's Operating Corp.*, No. 04-Civ-3316, 2006 WL 2819730 at *9 (S.D.N.Y. Sept. 29, 2006). Defendants simply have not satisfied that a higher standard should be applied. *See also Karic v. Major Auto. Cos.*, Inc., 799 F.Supp.2d 219, 225-26 (E.D.N.Y.2011) (declining to apply an heightened standard and finding that although "the parties have been engaged in discovery for several months...discovery is far from complete" and "at this preliminary stage of discovery, the Court finds no basis for deviating from accepted authority to require plaintiffs to make more than the minimal showing that they are similarly situated to the potential class members.").

### C. Plaintiffs are Similarly Situated to Potential Opt-in Plaintiffs

Under the lenient standard that governs this conditional certification inquiry, Plaintiffs need only make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common unlawful policy. The Court finds that Plaintiffs have carried their burden of demonstrating a factual nexus uniting them with drivers who worked for the Defendants. At this stage, declarations based on Plaintiffs' "personal experiences and observations" and their conversations with co-workers and supervisors "[are] sufficient to establish a factual nexus between Plaintiffs" and other potential members of the collective." *Sanchez v. El Rancho Sports Bar Corp.*, 13 Civ. 5119, 2014 WL 1998236, at *2 (S.D.N.Y. May 13, 2014). Indeed, Plaintiffs' declarations

alleged that although they worked 58-65 hours per week, Defendants maintained a uniform unlawful policy of failing to pay drivers an overtime premium for work performed each week in excess of 40 hours. Instead, Defendants compensated Plaintiffs at a rate of 60% of receivables from Defendants' franchisor Golden Touch Transportation. This policy also extended to other drivers, with whom Plaintiffs were familiar, who worked for Defendants and were subject to the same hours, wages and work conditions.

Defendants' reliance on the so-called *Laroque* factors in resisting conditional certification is misplaced. *Laroque v. Domino's Pizza, LLC*, 557 F. Supp.2d 346 (E.D.N.Y. 2008)[3]. These factors apply in the decertification stage, not in this initial, conditional certification stage. *Laroque*, 557 F.Supp.2d at 352 ("after discovery, a second inquiry begins, generally precipitated by a defendant's motion for decertification, in which the court examines with a greater degree of scrutiny whether the members of the plaintiff class-including those who have opted in-are similarly situated."); *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 638 (S.D.N.Y. 2013); *Zivali v. AT & T Mobility, LLC*, 784 F.Supp.2d 456, 460 (S.D.N.Y. 2011).

Defendant Dergunov submitted an affidavit disputing Plaintiffs' factual allegations. (Dkt. No. 60, Exhibit 1 (Decl. of Konstantin Dergunov)). At this stage, however, the Court may not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United States Auto. Ass'n*, 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007).

It should be noted that Defendants also argue that "the Plaintiffs were independent contractors whose relationship with the Franchisee Defendants was nothing more than that of Independent Contractors who were given access to van(s) and allowed to make their own pickups whenever and however they saw fit." (Defs.'s Br. at 5). Defendants further contend that "[t]here is no significant factual nexus between either Plaintiff and the other independent contractors, and the Plaintiffs do not support their affidavits with any evidence." *Id.* This distinction, however, as to the proper classification of the drivers as employees or independent contractors goes to the merits of this case and is irrelevant at this stage of litigation. *See Kim v. 511 E. 5th St., LLC,* 985 F.Supp.2d 439, 447 (S.D.N.Y.2013) ("…to the extent that the Defendants attempt to prevail on the merits of [Plaintiff's] individual FLSA claims in response to his motion for conditional collective action certification, their contentions are irrelevant. They are asking the Court to undertake the very type of premature merits determination that is proscribed at the preliminary certification stage.").

Accordingly, since Plaintiffs have met their initial burden, the Court concludes that notice should be sent to all current and former drivers, including drivers classified as independent contractors, who worked for, or contracted with, Defendants Konstantin Dergunov, Lokeko Inc., or Double 'K' USA, Corp.

**Plaintiff's Proposed Notice**

Plaintiffs provided the Court with a proposed Notice of Lawsuit and Consent to

---

[3] The *Laroque* factors are: "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class." Laroque, 557 F. Supp.2d at 352.

Become a Party Plaintiff form. (Dkt. No. 59, Declaration of Naydenskiy, Exhibits D-F). Plaintiffs request a court-facilitated notice of this action to putative opt-in plaintiffs and approval of their proposed notice and consent form.

It is well recognized that district courts have the discretion to determine what constitutes adequate notice to putative plaintiffs in a collective action under the FLSA. *Laroque*, 557 F. Supp. 2d at 356 (citation omitted); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 55 (S.D.N.Y. 2009) ("Courts consider the overarching policies of the collective suit provisions and whether the proposed notice provides accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate.") (citation omitted). Here, court-facilitated notice is appropriate "to prevent erosion of claims due to the running statute of limitations, as well as to promote judicial economy." *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.,* No. 12 Civ. 0265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012).

Defendants have raised no specific objections to the form, content or the timing of Plaintiff's proposed notice. Rather, Defendants argue generally that "[t]he Plaintiffs' motion requesting discovery and notice to the alleged potential putative plaintiffs should be denied in its entirety" and "the proposed notice is not fair or accurate and will subject the defendants and third parties to further damages without providing any relief to the did not pose any objections to the Plaintiffs notice was limited to the Plaintiffs or promote judicial economy." (Defs.'s Br. at 12). These general, unspecific objections are not well-founded and the Court grants Plaintiff's proposed notice with the following modifications.

### A. <u>The Relevant Time Period</u>

Plaintiffs argue that as a matter of judicial economy the Court should apply a six year limitations period and therefore, seek to certify a class for the period "August 10, 2006 to the entry of judgment in this case." (Pl.'s Br. at 7, 19-20). The FLSA provides for a two-year statute of limitations, or three years where a violation is willful violation. *See* 29 U.S.C.A. § 255(a). Plaintiffs, also allege claims pursuant to the New York Labor Law, which provides for a six-year statute of limitations. *See* N.Y. Lab. Law § 663(3). Within the Eastern District of New York, notice to potential opt-in plaintiffs, going back six years, has been authorized where plaintiffs seek relief under both the FLSA and the New York Labor Law. *See Klimchak v. Cardrona, Inc.,* No. 09 Civ. 04311, 2011 WL 1120463, at *7 (E.D.N.Y. Mar. 24, 2011) ("…it is appropriate to permit plaintiffs to provide notice to potential opt-in plaintiffs who may have viable state law claims within the six (6) year statute of limitations period, even if those plaintiffs' FLSA claims might be time-barred."). Accordingly, Plaintiffs' request for a six-year notice period is granted.

### B. <u>Notice of Pendency and Consent Form</u>

Plaintiffs request that the proposed notice of the collective action and consent form be distributed in English and Russian translations because Russian is the primary language of potential plaintiffs. (Pl.'s Br. at 18). Plaintiffs also request that counsel should be authorized to send a deadline reminder letter to potential opt-in plaintiffs,

prior to the termination of the opt-in period. (Pl.'s Br. at 20); (Dkt. No. 59, Declaration of Naydenskiy, Exhibit F). Defendants have made no objections. As such, the Court grants the provision of the notice and consent forms in English and Russian translations as well as the dissemination of a reminder letter.

Plaintiffs propose that notice and consent forms be mailed by first class mail and electronic mail to potential opt-in plaintiffs' last known addresses. They also request that the Court order Defendants to post notice of the collection action and the consent forms "in a conspicuous location where it can be easily seen by potential collective action members." (Pl.'s Br. at 18). The Defendants have made no objections. Further, "[s]uch posting at the place of employment of potential opt-in plaintiffs is regularly approved by Courts." *Khamsiri*, 2012 WL 1981507, at *1 (citations omitted). These requests are therefore granted.

### C. Discovery of Potential Opt-In Plaintiffs

Plaintiffs move for the production of the last known mailing addresses, phone numbers and electronic mail addresses for all potential opt-in plaintiffs who worked for, or contracted with Defendants, and social security numbers of the collective action members whose notice is undeliverable. (Pl.'s Br. at 21, 23). Plaintiffs further request that Defendants be ordered to provide the information in paper and digital format, to expedite the posting and mailing of notice. (Pl.'s Br. at 22).

In granting notice of a collective action, courts within this Circuit typically permit the production of the names and last known addresses of potential opt-in plaintiffs. *See*

*Cruz v. Lyn–Rog Inc.*, 754 F.Supp.2d 521, 526 (E.D.N.Y. 2010). Courts, however, have exercised restraint where, without good cause, the authorization extends to the disclosure of private information such as social security numbers. *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 201 (N.D.N.Y. 2009); *cf. Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011) ("While courts often decline to allow discovery of social security numbers due to privacy concerns, it is generally accepted that such discovery is permitted where Plaintiff can demonstrate that names and contact information are insufficient to effectuate notice."). Accordingly, Defendants are directed to produce to the Plaintiffs the names, last mailing addresses, alternate addresses, telephone numbers, dates of employment of all current and former drivers, including drivers classified as independent contractors, who worked for, or contracted with, Defendants from August 10, 2006 until the present.

### D. Rights and Obligations of Opt-in Plaintiffs

The proposed notice does not adequately describe the potential plaintiffs' options in retaining counsel. The proposed notice states: "If you choose to join this suit and agree to be represented by the named plaintiffs through their attorneys, your counsel in this action will be: Naydenskiy Law Group P.C." This statement and the instructions within the notice suggest that opt-in plaintiffs do not have other options in securing representation. The notice should be modified "…so that potential plaintiffs are informed that they may retain their own counsel, should they choose to join the within litigation, as an alternative to plaintiffs' counsel's firm." *Garcia v. Pancho*

*Villa's of Huntington Village, Inc.*, 678 F.Supp.2d 89, 95 (E.D.N.Y. 2010); *Soler v. G & U, Inc.*, 86 F.R.D. 524, 530 (S.D.N.Y. 1980) ("The workers should be informed that they may retain their own counsel....").

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for conditional certification of a collective action is granted. The parties are directed to meet and confer to draft a joint proposed notice that complies with this Order and to file the same on ECF by January 25, 2016.

SO ORDERED.

*Ramon E. Reyes Jr.*
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: January 15, 2016
       Brooklyn, NY